*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* COLLINS, Minors.

UNPUBLISHED
June 10, 2026
1:13 PM

Nos. 376802; 377326
Sanilac Circuit Court
Family Division
LC No. 20-036336-NA

Before: BAZZI, P.J., and RICK and MALDONADO, JJ.

PER CURIAM.

Respondents are the biological parents of two children who were removed from their care because respondents' mental health challenges interfered with their ability to safely and effectively parent the children. Although respondents showed some benefit from services offered by petitioner, this improvement was not sustained; and at the termination hearing, one of respondent's minor children asked for respondents' parental rights to be terminated. Respondents now appeal by right the trial court order terminating their parental rights to the minor children, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (3)(g) (failure to provide proper care and custody), and (3)(j) (reasonable likelihood of harm if returned to parents). We affirm.

## I. BACKGROUND

This case is not the first time a petition has been filed against respondents, nor is it the first time they have been before this Court. The children were removed in 2020 because of respondents' mental health instability, and we affirmed that removal. *In re Collins Minors*, unpublished per curiam opinion of the Court of Appeals, entered October 15, 2020 (Docket Nos. 352847 and 352871). At that time, respondents admitted that their mental health instability negatively affected their ability to care for the children and that they were neglecting their medications and mental health appointments. Respondents addressed those concerns to the satisfaction of the trial court, and, in 2021, at petitioner's request, the trial court terminated its jurisdiction and dismissed the case.

-1-

Two years later, however, respondents were "picked up by law enforcement executing a mental health order," their home was full of trash and accessible weapons, one child told a worker that "he wanted [Children's Protective Services (CPS)] to 'turn mom back alive because she is deceased,' " and the other child described respondent-mother as " 'delusional and crazy.' "

The trial court ordered the children removed from respondents' care and ordered supervised parenting time. Respondents' conduct at parenting-time visits was erratic. Initially, respondent-father yelled at the children, and respondent-mother said that she was sorry that she made the children. In the subsequent visits, respondents sometimes engaged with the children, and other times discussed this case or their financial problems with the children, which made the children feel that the children had caused those problems. The oldest child spent much of those visits attempting to cheer respondent-mother up and trying to carry the conversation, while the youngest child was ignored.

Respondents were ordered to rectify several barriers to their reunification with the children. Specifically, the trial court ordered respondents to maintain a safe and suitable living environment, complete and benefit from life-skills and parenting classes, and complete and follow the recommendations of their psychological evaluations. At the outset, respondents obtained their psychological evaluations, had a strong bond with the children, and appeared to make progress. Similarly, respondents cleaned their home significantly and properly secured all weapons and chemicals outside of a child's reach. Thereafter, supervised parenting-time visits were moved to respondents' home where the children seemed happy and comfortable, and respondents were clearly more involved. Respondents' parenting time was then expanded to include unsupervised weekend visits.

Unfortunately, respondents' progress did not last. Their home began accumulating clutter, and the children returned from their visits tired, hungry, and dirty because respondents left the children unsupervised and failed to follow a bedtime or hygiene routine. Petitioner referred respondents to a variety of services, including budgeting and food stamps, and advised their in-home worker to find a way to help respondents keep their home clean without becoming overwhelmed. Contrary to the agreed upon safety plan, the children continued to be unfed, unbathed, and tired—causing behavioral and school problems after visits. Those problems abated after visits were returned to being supervised. However, respondents began displaying erratic behavior at visits, and they frequently would not interact with the children. The oldest child, of his own accord, decided that he wished to be adopted, despite knowing that his foster placement, where the children were thriving, could not adopt the children.

A termination hearing was held, at which the testimony largely focused on the extensive services that were provided to respondents and their lack of benefit from those services. The trial court heard testimony regarding respondents' erratic and discomforting conduct at parenting-time visits, respondents' poor mental health, the state of their home, and the unanimous conclusion of the children's therapists that the children would be harmed if returned to respondents' care. The trial court terminated respondents' parental rights, finding that statutory grounds for termination

existed and that termination would be in the children's best interests. This consolidated appeal followed.[1]

## II. REASONABLE EFFORTS

On appeal, respondents argue that the trial court erred by finding that statutory grounds for termination existed and that termination was in the children's best interests. However, throughout their discussion of these issues on appeal, respondents also argue that petitioner did not make reasonable efforts at reunification because petitioner failed to tailor services to their mental health issues and failed to offer therapeutic visitation or family therapy. We disagree.

Generally, an issue that is not contained in the statement of questions presented is deemed abandoned. *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 221; 761 NW2d 293 (2008). Further, "[i]n order to preserve an argument that petitioner failed to provide 'adequate services,' [a] respondent must 'object or indicate that the services provided to them were somehow inadequate. . . .' " *In re Atchley*, 341 Mich App 332, 336; 990 NW2d 685 (2022), quoting *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012). We review unpreserved issues for plain error affecting substantial rights. *In re MJC*, 349 Mich App 42, 47; 27 NW3d 122 (2023). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011) (quotation marks omitted). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008). Respondents did not make a timely objection to the services they were provided at the time the court adopted the case service plan or throughout the pendency of the case, only raising the issue at closing argument following the termination hearing; and, respondents did not include the reasonable efforts issue in their questions presented on appeal. Accordingly, the issue of reasonable efforts is both unpreserved, *In re Atchley*, 341 Mich App at 336, and could also be deemed abandoned, *Mettler Walloon*, 281 Mich App at 221. Regardless, we conclude that petitioners made reasonable efforts toward reunification.

In the absence of aggravated circumstances, petitioner must make reasonable efforts to reunify children and their parents. *In re Simonetta*, 340 Mich App 700, 707; 987 NW2d 919 (2022). Petitioner's obligation only extends to efforts that are reasonable. See *In re Hicks/Brown*, 500 Mich 79, 85-86; 893 NW2d 637 (2017) (petitioner not obligated to modify services to the point of fundamentally altering those services) and *In re Terry*, 240 Mich App 14, 27-28; 610 NW2d 563 (2000) (petitioner not obligated to accommodate a parent with full-time live-in assistance). Furthermore, while petitioner "has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered" and to benefit from those services. *In re Frey*, 297 Mich App at 248. Critically, even if a parent requires some accommodations, "a parent,

---

[1] *In re Collins, Minors*, unpublished order of the Court of Appeals, entered October 1, 2025 (Docket Nos. 376802, 377326).

whether disabled or not, must demonstrate that [he or she] can meet [the children's] basic needs before they will be returned to [the parent's] care." *In re Terry*, 240 Mich App at 27-28.

Respondents argue that they were hampered by a delay in starting services. But some of that delay was because respondents missed hearings, and, in any event, that delay did not prevent them from making progress to the point of receiving unsupervised weekend visits. By that time, their bond with the children was still strong, and the children were eager to return to their care. It is not apparent how the delay in starting services contributed to respondents' inability to sustain their progress.

Further, respondents were indisputably provided with a variety of services that, as discussed, they simply did not benefit from. Respondents argue that they should have been offered help budgeting for the amount of money they would receive from Social Security when the children were returned to their care, but respondents ignore that they were given extensive help with budgeting for the amount of money that they actually had, and that they routinely ignored advice about how to stay within that budget. Until respondents could demonstrate that they could handle budgeting at all, there would have been no point in planning for budgeting with the children in the home. Finally, respondents never brought up a need for therapeutic parenting time or family therapy until the end of the case, and, in any event, the lack of a bond between respondents and the children was a byproduct of respondents' inability to achieve mental stability rather than a primary barrier from the outset. Services to help improve the bond between respondents and the children would have been misplaced given that the underlying problem of their bond with the children was not being addressed—respondents' instability. Therefore, respondents have not established plain error.

### III. STATUTORY GROUNDS FOR TERMINATION

Respondents argue that the trial court erred by finding statutory grounds for termination, largely focusing on the progress that they made and claiming that there was no evidence that they did, or would, harm the children. We disagree.

To terminate parental rights, the trial court must find at least one of the statutory grounds for termination in MCL 712A.19b(3) exist, and that termination is in the children's best interests under MCL 712A.19b(5). *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). The trial court must find a statutory ground proven by clear and convincing evidence, and the child's best interests must be proven by a preponderance of the evidence on the whole record. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013) (quotation marks and citation omitted).

The trial court terminated respondents' parental rights under MCL 712A.19b(3)(c)(*i*), (3)(g), and (3)(j), which provide that termination is proper if:

> (3)(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

\* \* \*

(3)(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

\* \* \*

(3)(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if the child is returned to the home of the parent.

These grounds contain forward-looking components. *In re KV*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 374236); slip op at 7. A pattern of past conduct that continues through the proceedings may generally be predictive of future conduct. *In re White*, 303 Mich App at 709-711; *In re JL*, 483 Mich 300, 332-334; 770 NW2d 853 (2009). "A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide proper care and custody" and "that the child will be harmed if returned" to the parent's care. *In re Smith*, 324 Mich App 28, 49; 919 NW2d 427 (2018) (quotation marks and citations omitted). The harm contemplated by MCL 712A.19b(3)(j) includes psychological or emotional harm, not just physical harm. *In re Sanborn*, 337 Mich App 252, 279; 976 NW2d 44 (2021).

There is no dispute that at least 182 days elapsed for purposes of (3)(c)(*i*), and respondents concede in their briefs that they were financially able to care for the children for purposes of (3)(g).

Respondents' arguments are essentially that they did everything that was asked of them and that they proved their ability to make significant improvements, neither of which is in dispute. The problem is that respondents ended the case where they began and demonstrated that they could not *sustain* those improvements. Contrary to the argument that they only got one chance, this case was actually their second chance. Furthermore, even though they did manage to clean their home for a brief period, and even though parenting-time visits were *better* when held in their home, the children were clearly still neglected while in respondents' care. Respondents should be credited for removing the weapons and properly storing cleaning chemicals from their home, but clutter to the point of the house becoming unnavigable is a safety problem, and dog feces and unclean surfaces are a health problem. More importantly, respondents began the case with inappropriate, bizarre, and inattentive behavior around the children, and they ended the case without any improvement in this area.

Respondents participated in services but failed to show that they benefited from services or that they could sustain any progress for an extended period of time to provide the stability that the children needed. While respondents never became homeless, their budget was a constant struggle even with help, and the children were hungry, unbathed, and tired while in respondents'

care, even for a weekend. A persistently unstable home environment and a persistent failure to address mental health issues both are evidence that a parent will not be able to provide proper care and custody. See *In re Gonzales/Martinez*, 310 Mich App 426, 432-433; 871 NW2d 868 (2015). Even if a parent is seeking treatment, the parent's history of failing to manage his or her mental health despite such treatment is evidence that the parent cannot provide proper care and custody. *In re Moss*, 301 Mich App at 81-82. The evidence showed that, even if respondents were engaged in therapy, that treatment was either ineffective or inadequate, and their history of failing to sustain progress may be extrapolated to the future. See *id*.

Even presuming that the children were no longer in any physical danger from respondents' home, the evidence showed that they remained at risk of being deprived of sleep, food, and hygiene, all of which come at a physical cost. Furthermore, the children's therapists each testified that the children would be harmed if returned to an unstable environment. Respondents demonstrated either an unawareness of, or a disinterest in, the children's mental well-being through their neglect or interrogation of the children during parenting-time visits, even when they knew they were being observed. Accordingly, the trial court did not clearly err by finding that respondents' persistent inability to benefit from their services or demonstrate that they could sustain any progress would harm the children emotionally, and possibly physically, if the children were returned to respondents' care.

In short, the trial court did not err by finding at least one statutory ground for termination proven by clear and convincing evidence.

## IV. BEST INTERESTS

Respondents also argue that termination of their parental rights was not in the children's best interests because they had a strong bond with the children, they should be credited for their positive role in raising the children, they were only given one chance despite being able to show that they could maintain their home and health, and the children would be disrupted because their foster placement cannot adopt them. We disagree.

"The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App at 713. "[T]he focus at the best-interest stage has always been on the child, not the parent." *In re Moss*, 301 Mich App at 87. "In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App at 41-42 (citations omitted). The trial court may also consider "the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714. The same evidence that supports finding statutory grounds for termination exist may also support a finding regarding a child's best interests. See *In re Trejo*, 462 Mich 341, 343; 612 NW2d 407 (2000) ("[E]ven where no best interest evidence is offered after a ground for termination has been established," the court may "find from evidence on the whole record that termination is clearly not in a child's best interests"), superseded in part by statute as observed in *In re Moss*, 301 Mich App at 83.

As discussed, respondents may have participated in parenting-time visits and services, but they made the children unnecessarily uncomfortable by talking about inappropriate topics, neglected the children's physical and emotional needs, demonstrated an inability to maintain the stability that the children required, and showed poor parenting capabilities. Respondents argue that they were not given credit for both children being regarded as bright, pleasant, and resilient, but the evidence shows that the children thrived after being removed from respondents' care. All of the professionals who testified agreed that the children's best interests would be served by terminating respondents' parental rights, even knowing that the children would be forced to move one more time. Further, respondents' oldest child testified that he did not want to go back to respondents because "[i]t hasn't really changed." Contrary to respondents' arguments, they have *not* shown an ability to maintain their mental health, but rather that they temporarily achieved a semblance of health before they regressed and exposed the children to more damaging instability and neglect. The children need a stable, structured, attentive, and reliable home that respondents proved they cannot provide. Therefore, the trial court did not err by finding that termination was in the children's best interests.

Affirmed.

/s/ Mariam S. Bazzi
/s/ Michelle M. Rick
/s/ Allie Greenleaf Maldonado